UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TONI ANDERSON,

    Plaintiff,

v.                                    Case No: 2:17-cv-220-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Toni F. Anderson seeks judicial review of the denial of her claims for disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the Joint Memorandum (Doc. 20) and the applicable law. For the reasons discussed herein, the decision of the Commissioner will be reversed.

### I. Issues on Appeal[1]

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the ALJ's decision to give little weight to the opinions of Plaintiff's treating psychiatrist, Dr. Young, and treating physician, Dr. Taylor; (2) whether substantial evidence supports the ALJ's determinations regarding Plaintiff's medically

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

determinable impairments, severe impairments and residual functional capacity ("RFC") in light of Plaintiff's alleged fibromyalgia; and (3) whether substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

## II. Summary of the ALJ's Decision

On July 26, 2010 and August 23, 2011, Plaintiff filed applications for DIB and SSI, respectively, alleging her disability began February 15, 2010 due to severe mental problems, depression, anxiety, post-traumatic stress disorder ("PTSD"), shoulder pain, neck pain, back pain and memory loss. Tr. 388-89, 418-25, 437-45. Plaintiff's claim for DIB was denied initially on September 21, 2010, and upon reconsideration on November 12, 2010. Tr. 273-74, 278-79. On December 2, 2010 Plaintiff requested a hearing before an ALJ. Tr. 281-82. ALJ Larry J. Butler held a hearing on January 10, 2012, and on March 5, 2012, ALJ Butler found Plaintiff was not disabled from February 15, 2010 through the date of the decision. Tr. 180-97, 211-21. On June 21, 2013 the Appeals Council granted Plaintiff's request for review and remanded the claim for a new hearing and decision. Tr. 227-29. ALJ Butler held a second hearing on March 10, 2014,[2] and on March 11, 2015, again he found Plaintiff was not disabled from February 15, 2010 through the date of the decision. Tr. 139-77, 234-58. On August 15, 2015, the Appeals Council again granted Plaintiff's request for review and remanded the claim. Tr. 265-69. ALJ William G. Reamon held a hearing on August 8, 2016,[3] and on September 28, 2016, ALJ

---

[2] The parties note in the Joint Memorandum that the hearing transcript erroneously states the hearing date was March 10, 2016. Doc. 20 at 2 n.1; see Tr. 139-77.

[3] The Court notes the hearing transcript indicates the date was October 8, 2016, but

Reamon[4] found Plaintiff was not disabled from February 15, 2010 through the date of the decision. Tr. 20-32, 87-129.

At step one, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015, and had not engaged in substantial gainful activity since the alleged onset date of February 15, 2010. Tr. 22. Next, at step two, the ALJ found Plaintiff had severe impairments of cervical spondylosis; cervical spine degenerative disc disease, with C5-C6 disc protrusion without neural compromise; arthralgias (myofascial pain); lumbosacral spondylosis without myelopathy; affective disorder; and anxiety disorder. *Id.* At step three, the ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 23. The ALJ determined Plaintiff had the RFC to perform light work,[5] except:

---

both the Joint Memorandum and the ALJ's decision state the date of the hearing was August 8, 2016. *Compare* Tr. 87, *with* Tr. 20; Doc. 20 at 2.

[4] For the remainder of this Order, references to "the ALJ" are made in reference to ALJ Reamon.

[5] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

> [S]he can do no rope, ladder, scaffold climbing; is limited to occasional ramps and stairs climbing, balancing, stooping, kneeling, crouching, and crawling; and overhead reaching is limited to occasional bilaterally.

Tr. 25. The ALJ also limited Plaintiff to performing jobs with a specific vocational profile ("SVP") of no more than 2[6] and only occasional interaction with coworkers and supervisors. *Id.*

At step four, the ALJ determined Plaintiff was unable to perform any past relevant work. Tr. 30. Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy Plaintiff could perform. Tr. 30-31. Thus, the ALJ concluded Plaintiff was not disabled from February 15, 2010 to September 28, 2016, the date of the decision. Tr. 31-32. The Appeals Council denied Plaintiff's request for review on March 23, 2017, and Plaintiff subsequently filed a Complaint with this Court. Tr. 1-4; Doc. 1. The ALJ's September 28, 2016 decision is the final decision of the Commissioner, and the matter is now ripe for review.

### III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th

---

[6] The Dictionary of Occupational Titles ("DOT") defines SVP as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C: Components of the Definition Trailer, § II, SVP. An SVP of 1 encompasses a short demonstration only, and an SVP of 2 encompasses "[a]nything beyond a short demonstration up to and including 1 month." *Id.*

Cir. 2011). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[7] Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260

---

[7] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527 (effective March 27, 2017), 416.920a, 416.920c, 416.927 (effective March 27, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

(11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV.     Discussion

In evaluating the medical opinions of record, including those of treating medical providers, examining medical providers and non-examining state agency medical consultants, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *Winschel*, 631 F.3d at 1178-79.

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from

the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Further, the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996). Here, Plaintiff argues the ALJ improperly weighed the opinions of two treating physicians: Gregory Young, M.D., a psychiatrist from Lee Mental Health, and James Taylor, D.O., a primary care provider. Because the Court finds the case must be remanded for reconsideration of Dr. Young's opinions, the Court will not address Dr. Taylor.

Dr. Young was Plaintiff's treating psychiatrist from July 2010 to at least December 2013. Tr. 705-08, 780-83, 813-14, 817-18, 821-32, 850-67, 869-86, 932-75, 977-78, 989-92, 995-98, 1022-25, 1028-32, 1035-38, 1041-44. During that time, Dr. Young diagnosed Plaintiff with anxiety disorder, depression and PTSD, and he prescribed various psychotropic medications at increasing dosages. Doc. 20 at 6 (citing Tr. 705-06, 781, 831-32, 1105-06). Dr. Young treated Plaintiff consistently between 2010 and 2013, repeatedly noting—generally on a monthly basis—that Plaintiff was tearful, anxious, depressed and suffering from panic attacks. *Id.* at 6-

7 (citing, *e.g.*, Tr. 821, 823, 825, 827, 831, 866, 933, 941, 945, 949-50, 953-54, 958, 962, 966, 970, 990-92, 996-97, 1042-43, 1061). Dr. Young noted multiple times over the course of several years that it was not likely Plaintiff could return to work within twelve months, and Plaintiff indicated to Dr. Young that she believed her mental impairments contributed to her losing jobs in the past. *Id.* (citing, *e.g.*, Tr. 852, 1037); *see also* Tr. 942 (Feb. 14, 2013), 950 (Nov. 19, 2012), 954 (Sept. 20, 2012), 958 (Aug. 2, 2012), 992 (Oct. 31, 2013), 998 (Dec. 23, 2013), 1038 (Mar. 3, 2014).

Dr. Young also completed a questionnaire as to Plaintiff's mental RFC on April 20, 2011—one of the opinions at issue here—indicating Plaintiff had "marked"[8] impairments in her abilities to accept instruction from or respond appropriately to criticism from supervisors; work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes; respond appropriately to coworkers and peers; perform and complete work tasks in a normal work day or week at a consistent pace; process subjective information accurately and use appropriate judgment; carry through instructions and complete tasks independently; maintain attention and concentration for more than brief periods of time; respond appropriately to changes in work setting; remember locations and workday procedure and instructions; behave predictably, reliably and in an emotionally stable manner; and maintain personal appearance and hygiene. Tr. 796-99. Dr. Young indicated Plaintiff had "extreme"[9] impairments in her abilities to relate to the general public

---

[8] On the worksheet Dr. Young completed, "marked" is defined as "[u]nable to function in this area from 26% to 50% of the work day or work week." Tr. 996.

[9] On the worksheet Dr. Young completed, "extreme" is defined as "[u]nable to function

and maintain socially appropriate behavior; perform at production levels expected by most employers; be aware of normal hazards and take necessary precautions; and tolerate customary work pressures. *Id.* Dr. Young indicated Plaintiff's condition likely would deteriorate if she was placed under the stress of a job. *Id.* Dr. Young also completed a diagnostic review form on July 19, 2013, identifying Plaintiff's diagnoses as depressive disorder and bipolar depression. Tr. 974-75, 977-78.

The ALJ accorded Dr. Young's opinion little weight, reasoning:

> It is not consistent with the many mild mental status exams in the file. The opinion appears to be based heavily on the claimant's self-reports. Moreover, the opinion infringes upon a finding reserved for the Commissioner of Social Security, which has been duly delegated to the undersigned in his capacity as Administrative Law Judge.

Tr. 29 (citations omitted) (citing Tr. 692-708, 780-83, 813-32, 849-86, 931-73, 976-78, 988-1001).

Plaintiff argues the ALJ's findings regarding Dr. Young are not consistent with the record. Doc. 20 at 10. Plaintiff claims the ALJ's analysis overlooked that Dr. Young is a licensed psychiatrist who treated Plaintiff for several years, and that "[v]irtually none" of Plaintiff's mental status examinations by mental health professionals were within normal limits. *Id.* at 10-11. Plaintiff asserts there is no evidence supporting the ALJ's determination that Plaintiff's mental abnormalities upon examination were "mild," and to the contrary, Plaintiff's presentation and symptoms were severe. *Id.* at 11. Plaintiff contends the evidence does not support the ALJ's conclusion that the limitations Dr. Young assessed were based on Plaintiff's

---

in this area over 50% of the work day or work week." Tr. 996.

self-reports because Dr. Young examined Plaintiff at each visit. *Id.* The Commissioner responds that the ALJ complied with the Social Security regulations and gave good reasons for according little weight to Dr. Young's opinion, namely that Dr. Young's opinion was inconsistent with the many mild mental status exams in the file; the opinion appeared to be based on Plaintiff's self-reports; and the opinion concerned a matter reserved for the Commissioner. Doc. 20 at 15-17 (citing Tr. 698, 701-02, 705, 780, 815-16, 850-52, 854-56, 860-61, 864-65, 869-70, 873-75, 879-80, 883-84, 932-34, 936-38, 948-49, 952-54, 956-57, 960-61, 964-65, 968-69, 995-97).

In determining the weight that should be afforded Dr. Young's opinions, the ALJ was required to consider that Dr. Young had a consistent and long-lasting treating relationship with Plaintiff, that Dr. Young's opinions were supported by consistent mental status examinations and treatment notes over the course of several years, and Dr. Young's specialization as a psychiatrist. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). The ALJ was permitted to discount Dr. Young's opinions if he found they were not well-supported by medical evidence or inconsistent with the record as a whole, and the ALJ did not need to give any special weight to Dr. Young's opinion on whether Plaintiff could work because that decision is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2); SSR 96-6p, 1996 WL 374180; SSR 96-2p, 1996 WL 374188; *Crawford*, 363 F.3d at 1159-60. The ALJ gave three reasons for discounting Dr. Young's opinions: (1) they are inconsistent with the "many mild mental status exams in the file," (2) they appear to be "based heavily on the claimant's self-reports," and (3) they infringe on a finding reserved for

the Commissioner, i.e. Plaintiff's inability to resume employment. *See* Tr. 28-29. The Court finds substantial evidence does not support the ALJ's reasons to accord little weight to Dr. Young's opinions.

First, it is unclear why both the ALJ and the Commissioner characterize Plaintiff's mental status examinations as "mild." *See* Tr. 29; Doc. 20 at 11. At best, Dr. Young's treatment notes indicate Plaintiff was well-groomed, her insight and judgment were good or fair, she was oriented on all spheres, her thoughts were goal directed or coherent, and she was not suicidal or homicidal. *See* Tr. 705, 780, 815-16, 850-52, 854-56, 860-61, 864-65, 869-70, 873-75, 879-80, 883-84, 936-38, 944-46, 948-49, 952-53, 956-57, 960-61, 964-65, 968-69, 972, 989-91, 995-97, 1022-24, 1028-30, 1035-37, 1041-43. Nearly all of Dr. Young's records, however, also show Plaintiff was tearful, depressed or anxious during sessions; they consistently indicate significant depression, anxiety and panic attacks; they indicate her progress toward symptom control fluctuated, consistently worsening in 2012; and they repeatedly state his impression that Plaintiff would be unable to return to work in the next 12 months. *See* Tr. 705, 707, 780, 782, 815-16, 821, 823, 825, 827, 831, 851-52, 855-56, 858, 860, 862, 864, 866-67, 870-71, 874-75, 877, 879-81, 883-85, 932-34, 937, 941-42, 944-46, 949-50, 953-54, 957-58, 961-62, 965-66, 969-70, 990, 996-97, 1023-25, 1029-31, 1035-38, 1042-43. Dr. Young's records are consistent with other mental health providers' treatment notes as well, which also consistently indicate Plaintiff was depressed, anxious or constricted, and her progress toward symptom control fluctuated between remaining the same and worsening. Tr. 1049-50, 1053-55, 1058,

1060-62, 1065-66, 1103-05, 1108-09. Dr. Young's treatment plan for Plaintiff in 2010 indicated Plaintiff's "emotional/behavioral symptoms" were interfering with her life, and it declared an objective of helping Plaintiff practice medication compliance as a means of moving toward increased freedom from her symptoms of mental illness. Tr. 819. Given Dr. Young's own treatments notes and those of other mental health providers in the record, the Court finds substantial evidence does not support the ALJ's characterization of Plaintiff's mental status examinations as mild.

Second, it is unclear why the ALJ inferred that Dr. Young's opinions were based heavily on Plaintiff's "self-reports." *See* Tr. 29. Dr. Young was Plaintiff's treating psychiatrist for over three years, and it appears Dr. Young conducted mental status evaluations during virtually every visit. *See* Tr. 705-08, 780-83, 813-14, 817-18, 821-32, 850-67, 869-86, 932-75, 977-78, 989-92, 995-98, 1022-25, 1028-32, 1035-38, 1041-44. Dr. Young consistently made findings and diagnoses during the course of the treating relationship. *See id.* The Court thus agrees with Plaintiff that there is nothing in the record to suggest Dr. Young did not exercise independent, professional judgment in his findings regarding Plaintiff's symptoms, conditions and severity thereof. *See* Doc. 20 at 11; *see also Matthews v. Barnhart*, 347 F. Supp. 2d 1093, 1101 (M.D. Ala. 2003) ("Clinical psychologists deal with quintessentially subjective information with respect to which they must exercise professional, interpretive judgment."). Under the ALJ's logic, every mental health specialist's findings would be accorded little weight because they generally are based on self-reports. *See Davis v. Colvin*, No. 1:15-CV-0366-JFK, 2016 WL 4506782, at *5 (N.D.

Ga. Aug. 29, 2016) (reversing ALJ's decision to give little weight to a consultative psychologist due to psychologist's "alleged over-reliance on Plaintiff's self-reports"). Accordingly, the Court finds substantial evidence does not support the ALJ's determination that Dr. Young's opinion was based heavily on Plaintiff's self-reports.

Third, although the ALJ did not need to give any special weight to Dr. Young's specific findings that Plaintiff would not be able to work, that alone is not a sufficient reason to discount Dr. Young's opinions in general given the dozens of pages of treatment notes, assessments and diagnoses over the course of his treatment of Plaintiff. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-6p, 1996 WL 374180. Therefore, substantial evidence does not support the ALJ's stated reasons for discounting Dr. Young's opinion. *See* Tr. 28-29. Because the Court cannot be sure this error was harmless without re-weighing the evidence, the case will be remanded for further proceedings. *See Mills v. Astrue*, 226 F. App'x 926, 930-32 (11th Cir. 2007) (reversing ALJ's decision to give treating psychiatrist no substantial weight because the reasons supporting the decision were unsupported by substantial evidence and the court could not determine whether the error was harmless without reweighing the evidence).

Plaintiff also argues the ALJ erred in the following respects: in according little weight to Plaintiff's treating physician Dr. Taylor; in failing to recognize Plaintiff's fibromyalgia as a severe, medically determinable impairment and consider it in determining Plaintiff's RFC; and in improperly discounting Plaintiff's credibility.

Because this case must be remanded for consideration of Dr. Young's opinion, the Court will direct the ALJ to re-evaluate the other issues raised by Plaintiff.

ACCORDINGLY, it is

**ORDERED:**

1. The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

    a. Review and consider all of Plaintiff's medical records including Dr. Young's and Dr. Taylor's opinions and determine the weight to be given to such evidence and the reasons therefor, as well as the effect, if any, they have on the assessment of Plaintiff's RFC;

    b. Re-evaluate Plaintiff's medically determinable impairments and their severity as well as Plaintiff's RFC in light of the medical evidence of record, especially as related to her alleged fibromyalgia;

    c. Re-evaluate Plaintiff's subjective complaints, credibility and testimony in light of the medical evidence of record;

    d. Make any other determinations consistent with this Opinion and Order, or in the interests of justice.

2. The Clerk of Court is directed to enter judgment in favor Plaintiff, Toni Anderson, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 23rd day of August, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record